ON THE HOUSE SYNDICATION, INC., on behalf of themselves and all others similarly situated; Carey Bros Inc., on behalf of themselves and all others similarly situated, Plaintiffs—Appellants,

v.

FEDERAL EXPRESS CORPORATION, Defendant—Appellee.

On The House Syndication, Inc., on behalf of themselves and all others similarly situated; Carey Bros Inc., on behalf of themselves and all others similarly situated, Plaintiffs—Appellees,

v.

Federal Express Corporation, Defendant—Appellant.

No. 02–56158, 02–56234.
D.C. No. CV–99–01336–RMB(JFS), CV–99–01336–RMB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2003.

Decided Sept. 3, 2003.

David Zlotnick, Esq., Ralph B. Kalfayan, Esq., Krause & Kalfayan, San Diego, CA, Richard W. Cohen, Lowey, Dannenberg, Bemporad and Selinger, White Plains, NY, for Plaintiffs–Appellants.

Steven J. Cologne, Esq., Higgs, Fletcher & Mack LLP, San Diego, CA, Connie Lewis Lensing, Federal Express Corporation, Menphis, TN, Robert K. Spotswood, Esq., Spotswood LLC, Birmingham, AL, Erika R. Frick, O'Melveny & Myers LLP, San Francisco, CA, Walter Dellinger, O'Melveny & Myers, LLP, Washington, DC, for Defendant–Appellee.

Before SILVERMAN, W. FLETCHER, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

On July 31, 1997, Defendant Federal Express ("FedEx") issued a press release notifying its customers of an impending strike at United Parcel Service ("UPS") and detailing the measures it was taking to avoid disruptions in service. In that press release, FedEx stated: *"As provided in our Service Guide* and until further notice, we will not offer money-back guarantees." (Emphasis added.) The above quoted language did not purport to amend the Service Guide; rather, it purported to be consistent with it. The clear import of the language is that FedEx believed that the UPS strike triggered the *force majeure* clause in the Service Guide and relieved it of its obligation to pay the Money–Back Guarantee. Customers who contracted with FedEx during the Class Period were, or should have been, aware of FedEx's interpretation of its Service Guide. Any shipment after the date of the press release must be presumed to have been made with knowledge not only of the Service Guide itself, but also of FedEx's interpretation of that Guide in the context of the UPS strike.

Because of FedEx's construction of the Service Guide reflected in the July 31 press release, we hold that FedEx did not breach its Money–Back Guarantee provision during the Class Period. Any reasonable person reading FedEx's press release of July 31 could come to only one conclusion: Until further notice, FedEx was not offering money-back guarantees. *See* REST. (SECOND) OF CONTRACTS § 201 (2003) (explaining that where the first party "did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party," the contract term shall be interpreted according to the meaning attached by the first party). The judgment in favor of Plaintiffs on the Money–Back Guarantee claim is therefore reversed.

We affirm the district court's judgment in favor of Defendant on the Excess Charges claim. To the extent Plaintiffs rely on the "Invoice Adjustment" provision in the Service Guide, they offer no excuse for their failure to comply with the notice requirements set forth in that provision. The provision states that requests for in-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

voice adjustment "must be received within one year after the date of shipment if the overcharge was caused by [FedEx]." Neither the July 31 press release nor the telephonic recording purported to suspend or otherwise affect a customer's right to request invoice adjustment. Plaintiffs are therefore barred from recovering on this theory.

To the extent Plaintiffs cast their Excess Charges Claim as a traditional common law suit for damages due to breach of contract, the claim is also barred by Plaintiffs' failure to comply with the contractual notice requirements. The Service Guide expressly states that FedEx "must receive written notice of claim due to damage [or] delay ... within 15 days after delivery of the shipment" and "within 90 days after [FedEx] accept[s] shipment" for all other claims. Nothing in the July 31 press release or the telephonic recording purported to suspend a customer's right to pursue a claim for damage against the company.

Plaintiffs argue that the Service Guide does not expressly state that compliance with the internal claims procedures is a prerequisite to bringing a damages action in court. While this is true, the Service Guide does use mandatory language and it expressly states that the "FAILURE TO COMPLY WITH [THE] [NOTICE] CONDITION[S] MAY RESULT IN THE DENIAL OF A CLAIM." Other cases that have addressed the FedEx Service Guide's notice of claim provisions have interpreted them as requiring compliance as a prerequisite to suit. *See, e.g., Williams v. Federal Express Corp.*, 1999 WL 1276558 at *4 (C.D.Cal.1999) ("Read together, the airbill and Service Guide require that written notice of claim be filed within ninety days after FedEx accepts a package for shipment.... Because Williams failed to file a claim within ninety days after FedEdx

accepted the shipment, he cannot recover damages.").

We need not reach the remaining issues raised on appeal.

REVERSED IN PART; AFFIRMED PART. Each side to bear its own costs on appeal.

SILVERMAN, Circuit Judge, concurring.

I fully concur in the portion of the Memorandum affirming the judgment in favor of Federal Express on the excess charges claim. As for the judgment in favor of the plaintiffs on their claim that FedEx breached its money back guarantee, I agree that reversal is required but, respectfully, for a different reason. As I see it, the press release issued on July 31, 1997 plainly amended the Service Guide.

The Service Guide provided for a money-back guarantee for late delivery. It also stated how FedEx could amend the Service Guide:

> FedEx reserves the right, and only by authorization of its Senior Vice President of Marketing and Corporate Communications or successor positions, unilaterally, and from time to time, in writing, to modify, amend or supplement the rates, features of service and Service Conditions in this Service Guide applicable to all customers without notice, but no other agent or employee of FedEx, nor any other person or party, is authorized to do so.

The press release of July 31, 1997 made specific reference to the Service Guide and clearly stated that money-back guarantees would not be offered until further notice. The press release was (1) in writing and (2) authorized by FedEx's Senior Vice President of Marketing and Corporate Communications, the official designated in the Service Guide to be the only FedEx

person empowered to amend the Service Guide. By the terms of the Service Guide itself, a *writing* authorized by the *designated official* were the only two prerequisites to amending the Service Guide. FedEx did not have to say "Simon says" or "Mother, may I." Perhaps the press release could have been written better or with more legalese. Regardless, no reasonable person could have been left with any doubt whatsoever that FedEx was suspending the money-back guarantee until further notice. Indeed, in invoking the futility doctrine as a defense to their failure to submit a notice of claim, the plaintiffs themselves freely admit that FedEx's suspension of the money-back guarantee was "widely publicized."

Nor is an authorized writing disqualified as an amendment just because it has been widely disseminated or released to the press. If anything, the law should encourage wide dissemination of unilateral modifications to contracts such as those involved here, lest customers be misled.

It is true that eight days after the press release, FedEx's Senior Vice President of Marketing and Corporate Communications, T. Michael Glenn, promulgated a more formal amendment to the Service Guide. This does not mean that the July 31 writing did not amend the Service Guide. The August 8 writing was simply the formal documentation of the less formal but written action taken by Glenn on July 31. The formal amendment issued by Glenn on August 8 specifically purports to be "effective July 31, 1997" and to be "pursuant to my previous written approval."

It is not at all unusual for parties to make legally binding commitments, the formal documentation of which follows in due course. One example is an insurance agent's binder, which is effective immediately to provide coverage even though the formal insurance policy does not issue until much later. Another example is an oral stipulation made in open court to settle a lawsuit on certain terms, which is eventually followed by a formal settlement agreement containing those terms plus the customary settlement boilerplate. This is a commonplace occurrence.

Because FedEx effectively amended its Service Guide on July 31, 1997 to suspend the money-back guarantee until further notice, it did not breach its contract by failing to honor the guarantee after that date. It is for that reason that I would reverse the district court's judgment in favor of the plaintiffs.

RAWLINSON, Circuit Judge, dissenting.

I respectfully dissent from the majority disposition, because Fed Ex's newly minted argument that its press release did not purport to amend the Service Guide is simply not supported by the record in this case, and because Fed Ex's notice of claim requirement could not serve to bar Plaintiffs' action.

In its Answer to the Complaint, Fed Ex admitted that it "amended its July 1, 1997 Service Guide effective July 31, 1997 to, among other things, suspend its Money–Back Guarantees." (Excerpts of Record 37). Fed Ex included this admission as an "undisputed fact" (ER 861), and argued it before the district court (ER 333).

Fed Ex continued the amendment theme in its briefs on appeal (Red Brief at 13 and Gray Brief at 3) and at oral argument, until a question from one of the panel members alerted Fed Ex's counsel that it might be wise to abandon the amendment argument.

The fact is that the Press Release did not reference the *force majeure* clause in the Service Guide or rely upon it. The

Press Release was an ineffective attempt to amend the Service Guide, as reflected by Fed Ex's subsequent amendment of the Service Guide in accordance with its provisions.

The majority disposition cites the Restatement of Contracts for the proposition that because Fed Ex "did not know of any different meaning [of the Press Release] attached by [the Plaintiffs] and [the Plaintiffs] knew the meaning attached by [Fed Ex]," the Service Guide must be interpreted as Fed Ex urges. However, the record in this case contains no evidence that Fed Ex "did not know of any different meaning attached by" its customers. The record is silent on that point. There is also nothing in the record reflecting that Fed Ex's customers "knew the meaning attached by [Fed Ex to the Press Release]." To the contrary, one reading the Press Release could easily be confused as to exactly what Fed Ex intended to convey. The Press Release statement that "[a]s provided in our Service Guide and until further notice, we will not offer money-back guarantees" conflicts directly with the Service Guide provision offering a money-back guarantee if the package was not delivered as promised. A customer reading the Press Release and the Service Guide together would not inevitably conclude that Fed Ex's unstated reliance on the *force majeure* clause was the basis for its suspension of the money-back guarantee. As the district court recognized, a customer could more readily conclude that Fed Ex was bound by the money-back guarantee as provided in its Service Guide. Because the portion of the Restatement of Contracts cited in the majority disposition is not germane to this case, and no case authority undergirds the conclusion reached by the majority on this point, I cannot join the majority's ruling on the Press Release issue.

There is case authority on the notice-of-claim issue which, in my view, is contrary to the majority holding that Plaintiffs' failure to comply with Fed Ex's internal claims procedures bars the filing of a damages action in court.

We recently addressed a similar issue in *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1218, n. 5 (9th Cir.2003). We rejected Granite's argument, similar to that urged by Fed Ex, that the insurance policy's claim requirement imposed a de facto statute of limitations upon the filing of a subrogation action. We held that " 'claim,' in the context of the Granite insurance policy, refer[red] to notice rather than the filing of a complaint." Analogous reasoning applies to the Fed Ex Service Guide notice-of-claim provision. No principled basis exists to distinguish Fed Ex's notice-of-claim provision from Granite's. Therefore, I read our precedent as dictating a ruling that Fed Ex's notice-of-claim provision merely gives notice to Fed Ex for payment of claims, rather than imposing limitations upon the Plaintiffs' ability to bring a damages action.

In summary, I would uphold the district court's ruling that Fed Ex's Press Release did not effectively amend the Service Guide, and hold that the notice-of-claim provision did not bar Plaintiffs' action against Fed Ex. Accordingly, I respectfully register my dissent.